UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| RHONDA MARIE RIVERA, | ) | No. CV 16-398-PLA |
| Plaintiff, | ) | **MEMORANDUM OPINION AND ORDER** |
| v. | ) | |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) | |
| Defendant. | ) | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on January 19, 2016, seeking review of the Commissioner's denial of her application for Supplemental Security Income ("SSI") payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on February 17, 2016, and February 24, 2016. Pursuant to the Court's Order, the parties filed a Joint Submission on October 3, 2016, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Submission under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on June 21, 1967. [Administrative Record ("AR") at 127.] She has past relevant work experience as a caregiver, telemarketer, and hotel manager. [AR at 19, 39.]

On January 26, 2012, plaintiff filed an application for SSI payments, alleging that she has been unable to work since January 23, 2012. [AR at 12,127-36.] After her application was denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [AR at 12, 88.] A hearing was held on April 8, 2014, at which time plaintiff appeared, represented by an attorney, and testified on her own behalf. [AR at 24-43.] A vocational expert ("VE"), and April Madden, plaintiff's case manager in a mental health treatment center, also testified. [AR at 38-39, 39-42.] On June 20, 2014, the ALJ issued a decision concluding that plaintiff was not under a disability since January 26, 2012, the date the application was filed. [AR at 12-20.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [AR at 122-26.] When the Appeals Council denied plaintiff's request for review on November 23, 2015 [AR at 1-6], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008) (citation and internal quotation marks omitted); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (same). When determining whether substantial evidence exists to support the Commissioner's

decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (citation omitted); see Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence.") (citation and internal quotation marks omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Ryan, 528 F.3d at 1198 (citation and internal quotation marks omitted); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ.") (citation omitted).

## IV.

## **THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

**A.     THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995), as amended April 9, 1996. In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id.

If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. part 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id.  The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a prima facie case of disability is established. Id.  The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. Id.  The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.  THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since January 26, 2012, the application date. [AR at 14.] At step two, the ALJ concluded that plaintiff has the severe impairments of "degenerative disc disease, and affective disorders (adjustment disorder with anxiety and depression)." [Id.] He found plaintiff's asthma to be nonsevere. [Id.] At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listing. [Id.] He determined that she had mild restrictions in activities of daily living and social functioning, and moderate difficulties in concentration, persistence, or pace. [AR at 15.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[1] to perform a range of light work as

---

[1]  RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps
(continued...)

4

defined in 20 C.F.R. § 416.967(b),[2] including "lifting 10 po[u]nds frequently and 20 pounds occasionally, standing 6 in 8 hours, sitting 6 in 8 hours, with occasional bending/stooping, and limitation to simple routine tasks." [Id.] At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that plaintiff is able to perform her past relevant work as a caregiver "as actually and generally performed, which the vocational expert testified is at the light exertional level." [AR at 19, 39-40.] Accordingly, the ALJ determined that plaintiff was not disabled at any time from January 26, 2012, the date the application was filed. [AR at 20.]

# V.
# THE ALJ'S DECISION

Plaintiff contends that the ALJ erred when he: (1) relied on the VE's testimony; and (2) failed to fully consider the May 26, 2012, opinion of the psychiatric consultative examiner, Gary Bartell, M.D. [Joint Submission ("JS") at 4.] As set forth below, the Court agrees with plaintiff, in part, and remands for further proceedings.

**A.     STEP FOUR DECISION**

At the hearing, the VE testified that the Dictionary of Occupational Titles ("DOT") describes the occupation of caregiver as "medium, SVP 3," and "as performed [by plaintiff] it was light and in the general labor market this is an unskilled job." [AR at 39.] He then testified that plaintiff "had

---

[1](...continued) three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[2]     "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 416.967(b).

no certifications, so this would, in my opinion, really be an SVP of 2, light." [AR at 39.] The VE also testified that a person with plaintiff's RFC would be able to perform the occupation of caregiver, and acknowledged that as performed (at SVP 2), this was "in variance with the DOT," for the reasons he had stated. [AR at 39, 40, 41.] The Court notes that up to this point in his testimony, the VE had only provided an explanation for why he believed plaintiff had performed the caregiver position at SVP 2 instead of SVP 3 and had not provided any testimony explaining why he believed plaintiff had performed the caregiver position at the light, rather than medium, level of exertion. [See generally AR at 39-41.] Plaintiff's counsel then questioned the VE about the variance from the DOT with respect to his finding that plaintiff performed the caregiver occupation at the light exertional level:

> Q: On the caregiver job, which you say is performed as light work, if the caregiver was required as she was to protect her patient from falling, if that person actually did fall, would it still be light work?
>
> A: Well, they'd have to pick them up, so obviously it wouldn't be light work. And if they fell, that's -- that could occur. That's not really an exertional issue. But if the person fell, I think they'd be expected to pick them up, certainly.
>
> Q: And then -- and then it would be medium work as classified under the DOT?
>
> A: Yes, you know, typically what she did, she was a home health aide. You know, she didn't really bathe the person, provide them with activities, you know, the core activities of daily living. She was like an assistant. They take them shopping, take them to medical appointments. Then there's other people that come in and actually do the bathing, the transferring, things like that. And typically *that's* medium.

[AR at 42 (emphasis added).]

Plaintiff argues that the ALJ erred in his step four determination by relying on the VE's testimony in concluding that plaintiff, in view of her physical and mental RFC limitations, can perform her past relevant work as a caregiver (DOT No. 354.377-014). [JS at 4-9, 16-17; AR at 21-22.]

### 1. Physical RFC Limitations

Plaintiff argues that the DOT describes the occupation of caregiver as medium work and she could not perform that work as defined by the DOT based on her limitation to light work. [JS at 6.] She also notes that she could not perform that work as she actually performed it prior to her

asserted disability. [JS at 7.] In support, she states that at the April 2014 hearing she testified that as a caregiver she did a "'little housekeeping' and cooked dinner," and although she did not have to pick up the individual whom she cared for from her bed, she did have to put her arm around her when she walked so that she would not fall. [JS at 7; AR at 29.] In her March 28, 2012, Work History Report, plaintiff also reported that she "lifted patient, cleaned, made beds, made dinner, bathed, [and] dressed patient." [AR at 191.] She stated that in addition to lifting the patient, she lifted boxes, and the weight she frequently lifted was 50 pounds or more. [Id.] In short, plaintiff argues that her "full description of her job" shows that she lifted far more than twenty pounds as a caregiver. Therefore, the VE's explanation for the deviation from the DOT (i.e., that plaintiff performed it at the light exertional level), which "does not at all discuss [plaintiff's] Work History report," is inconsistent with plaintiff's complete description of her past work as actually performed. [JS at 7.]

Defendant counters that the ALJ based his step four finding "on explicit VE testimony that Plaintiff did not *actually* perform this work [as a caregiver] at the level [of medium as] described in the DOT." [JS at 13 (citing AR at 39).] Defendant states that the VE, "having heard Plaintiff's testimony and reviewed the record," noted that plaintiff's work as actually performed was more like a home health aide, and she "didn't really bathe the person, provide them with activities . . . of daily living," and her patients had "other people that came in and actually [did] the bathing, the transferring, things like that." [JS at 14 (citing AR at 42).] As conceded by the VE and acknowledged by defendant, "[o]nly *that* work [of bathing and transferring, things like that] would qualify as medium work -- and as the VE noted, there is nothing in the record to suggest Plaintiff ever actually performed her caregiver work that way." [JS at 14-15 (citations omitted).]

Both the VE and defendant misstate the record. For instance, the VE's conclusions that plaintiff "was like an assistant," and did not help with daily activities, but instead took her patient shopping and to medical appointments, and that other people came in to do the bathing and transferring and "things like that," are completely unsupported by the record. In fact, in her hearing testimony and/or her Work History Report, plaintiff testified that *she* performed such tasks for her

7

patient as cooking, cleaning, bathing, walking, dressing, and lifting.[3] [AR at 29, 191.] The Court finds no mention in the record that with respect to her caregiver activities, plaintiff ever stated that she either shopped or drove to medical appointments; if she performed those tasks for her patient, that information is not found in either her hearing testimony or in her Work History Report.[4] Additionally, the Court finds no evidence in the record that anyone else came to the home to bathe or transfer the patient while plaintiff was performing her caregiver activities. Although defendant credits the VE with reaching his conclusions after hearing plaintiff's testimony and reviewing the record, the VE's unsupported statements about plaintiff's caregiver job activities demonstrate otherwise.

As conceded by defendant and the VE, if plaintiff was performing such activities as bathing or transferring the patient, then the caregiver job would be classified as medium work. [AR at 42; JS at 14-15.] Given the fact that the VE's findings about the tasks he believed were performed by plaintiff were not supported by substantial evidence in the record, his conclusion that she performed that job at the light level also is not supported by the record. The ALJ's reliance on that testimony, therefore, was not supported by substantial evidence and remand is warranted on this issue.

### 2.   Mental RFC Limitations

Plaintiff also contends that because of her mental limitation to simple routine tasks she is unable to perform her past work as a caregiver because the caregiver occupation requires the ability to perform at Reasoning Level 3. [JS at 8-9.]

The VE testified that the caregiver job "in the general labor market this is an unskilled job."

---

[3]   Plaintiff testified at the hearing that she did not have to lift the patient "from the bed to the walker." [AR at 29.] This is not necessarily inconsistent with her statement in her Work History Report that she "lifted patient, boxes." [AR at 191.]

[4]   The Court notes that in her March 28, 2012, Function Report - Adult, plaintiff stated that during the day she does "grocery shopping, Dr. visits, take my medication, errands, rests a lot (it varies from day to day)." [AR at 157.] This description, however, has nothing to do with plaintiff's duties as a caregiver in 2000 and 2001. [See AR at 151.]

[AR at 39.] He also testified that because plaintiff "had no certifications," it was his opinion that the position, as performed, would "really be an SVP of 2." [Id.] Defendant argues that the VE's explanation that plaintiff performed the job at an "unskilled level,"[5] acknowledges the conflict between the DOT's Reasoning Level 3 categorization, and the VE's testimony that plaintiff could perform the job of caregiver as she actually performed it. [JS at 15 (citations omitted).]

The VE's statement that because plaintiff "had no certifications" the work would "really be an *SVP* [Specific Vocational Preparation] of 2" [AR at 39 (emphasis added)], fails to provide a reasonable explanation as to the deviation from the DOT where the caregiver occupation is described as requiring level 3 *reasoning* skills and the individual is limited to simple routine tasks. SVP is defined as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." DOT, app. C. An SVP of 3 indicates that the position would require anything from over one month up to and including three months of training, while an SVP of 2 indicates that the position would require anything from short demonstration up to and including 1 month of training. Id. "SVP ratings speak to the issue of the level of vocational preparation necessary to perform the job, not directly to the issue of a job's simplicity, which appears to be more squarely addressed by the GED [reasoning level] ratings." Meissl v. Barnhart, 403 F. Supp. 2d 981, 983 (C.D. Cal. 2005).

The DOT defines jobs at Reasoning Level 3 as requiring the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." DOT, App. C. Courts have found that a limitation to "simple, repetitive tasks" -- or as in this case -- simple routine tasks -- may be consistent with level 2 reasoning. See, e.g., Meissl, 403 F. Supp. 2d at 984 ("While reasoning level two notes the worker must be able to follow 'detailed'

---

[5] The Administration defines "unskilled work" as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time . . . and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed." 20 C.F.R. § 416.968(a). Unskilled jobs "ordinarily involve dealing primarily with objects, rather than with data or people . . . ." Soc. Sec. Ruling 85-15; see also infra n.6.

instructions, it also . . . downplayed the rigorousness of those instructions by labeling them as being 'uninvolved.'"); Vasquez v. Astrue, 2009 WL 3672519, at *3 (C.D. Cal. Oct. 30, 2009) ("[T]he DOT's reasoning development Level two requirement does not conflict with the ALJ's prescribed limitation that [p]laintiff could perform only simple, routine work."). However, Reasoning Level 3 expands the Reasoning Level 2 requirements of being able to follow "uninvolved" oral or written instructions, to include being able to follow instructions in diagrammatic form as well as oral and written forms, and to deal with "*several* concrete variables" as opposed to Level 2's "few concrete variables." DOT, App. C (emphasis added). The Ninth Circuit recently determined that Reasoning Level 3 is inconsistent with the limitation to simple and routine work tasks. See Zavalin v. Colvin, 778 F.3d 842, 843-44 (9th Cir. 2015) (finding an "apparent conflict between the residual functional capacity to perform simple, repetitive tasks, and the demand of Level 3 Reasoning"); Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005) (same); see also Poole v. Colvin, 2014 WL 2439985, at *3-4 (C.D. Cal. May 29, 2014) (substantial evidence did not support the ALJ's determination plaintiff could perform her past relevant work as the potential conflict between ALJ's determination plaintiff can perform simple routine tasks, and his finding that she can perform her past relevant work, which requires level 3 reasoning, was neither identified nor explained); Ney v. Colvin, 2015 WL 8178652, at *11-14 (N.D. Cal. Dec. 8, 2015) (ALJ's finding that plaintiff could perform his past relevant work, which as generally performed required level 3 reasoning, failed to address the conflict between his mental limitation to simple repetitive work and the finding that he could perform that work as actually or as generally performed). "Although the burden of proof lies with the claimant at step four, 'the ALJ still has a duty to make the requisite factual findings to support his conclusion.'" Stanton v. Colvin, 2016 WL 4426395, at *4 (C.D. Cal. Aug. 17, 2016) (quoting Pinto v. Massanari, 249 F.3d 840, 844 (9th Cir. 2001)). Moreover, an ALJ's determination that a claimant has the RFC to perform her past relevant work must contain a finding of fact as to the physical and mental demands of the past job, and that the claimant's RFC would permit a

return thereto. Soc. Sec. Ruling ("SSR")[6] 82-62; see also Soria v. Callahan, 16 F. Supp. 2d 1145, 1151 (C.D. Cal. 1997) ("At step four, the ALJ is obliged to ascertain the demands of the claimant's former work and to compare those demands with present capacity."). Here, although the VE addressed the apparent conflict between the *SVP* requirements of the caregiver occupation as defined and as actually performed, neither the VE nor the ALJ addressed the conflict between plaintiff's mental RFC limitation to "simple routine tasks" and the Reasoning Level 3 skills required for the caregiver position either as generally performed or as plaintiff actually performed it.

Remand is warranted on this issue.

**B.  OPINION OF THE PSYCHIATRIC CONSULTATIVE EXAMINER**

On May 26, 2012, the psychiatric consultative examiner, Dr. Bartell, conducted an examination of plaintiff. [AR at 242-46.] He observed that plaintiff cried during the evaluation, was mildly lethargic, maintained good eye contact, was pleasant, had mild articulation problems, and that her mood was dysphoric, tense, and anxious, with restricted emotional range. [AR at 244.] He diagnosed plaintiff with Adjustment Disorder with Anxiety and Depression Chronic. [AR at 245.] He determined she has the ability to perform simple and repetitive tasks, and, because of her depression, lethargy and/or distress, is moderately impaired in her ability to perform detailed and complex tasks, accept instructions from supervisors, interact with coworkers and the public, perform work activities consistently without special instruction, complete a normal workday or workweek without interruptions, and deal with the usual stressors encountered in the workplace. [AR at 245-46.]

Plaintiff contends that although the ALJ gave Dr. Bartell's opinion great weight, he "failed to adopt any limitations related to social functioning," particularly with respect to accepting

---

[6] "The Commissioner issues [SSRs] to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the [Social Security Administration]. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." Holohan v. Massanari, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (citations omitted).

instructions from supervisors and interacting with coworkers and the general public. [JS at 18.] She argues that the ALJ failed to "provide a single specific and legitimate reason for discounting Dr. Bartell's opinions" regarding plaintiff's social functioning, and that the error is not harmless. [JS at 18-19.]

Defendant argues that the only concrete recommendations regarding plaintiff's work-related capabilities mentioned in Dr. Bartell's opinion were that plaintiff has the ability to perform simple and repetitive tasks and to maintain regular attendance. [JS at 22 (citing AR at 245).] Although he noted moderate impairment in some areas, Dr. Bartell did not make concrete recommendations based on those impairments. [Id.] Additionally, Dr. Bartell did not find plaintiff disabled; instead, he "explicitly found that Plaintiff could perform work -- specifically simple and repetitive work." [JS at 23 (citing AR at 245).]

Because the ALJ determined that plaintiff could perform her past relevant work as a caregiver, a position that by definition involves close interaction with others, and the matter is being remanded as discussed above, the ALJ on remand shall also reconsider the effect, if any, of plaintiff's moderate impairments in the various areas of social functioning on her ability to perform the caregiver occupation or, if warranted, alternative occupations.

## VI.

## **REMAND FOR FURTHER PROCEEDINGS**

The Court has discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. See Lingenfelter v. Astrue, 504 F.3d 1028, 1041 (9th Cir. 2007); Benecke v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See Benecke, 379 F.3d at 593-96.

In this case, there are outstanding issues that must be resolved before a final determination can be made. In an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings. First, the ALJ shall reconsider and address plaintiff's moderate impairments as assessed by Dr. Bartell in the various areas of social functioning. Second, the ALJ shall reassess plaintiff's RFC and, with the assistance of a VE, if necessary, determine whether, given plaintiff's mental and physical RFC limitations, she is able to perform her past relevant work as a caregiver, as actually or generally performed.[7] If plaintiff is not so capable, then the ALJ should proceed to step five and determine, with the assistance of a VE if necessary, whether there are jobs existing in significant numbers in the regional and national economy that plaintiff can still perform.

## VII.
## CONCLUSION

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: October 17, 2016

                                                        PAUL L. ABRAMS
                                   UNITED STATES MAGISTRATE JUDGE

---

[7] Nothing in this decision is intended to disrupt the ALJ's finding that plaintiff is limited to simple routine tasks.